In the Matter of the Appraisal under the Transfer Tax Act of a Certain Trust Fund held by CHARLES T. HARBECK, as Trustee for ELIZA D. HARBECK, under the Last Will and Testament of JOHN H. HARBECK, Deceased, et al., Appellants; BIRD S. COLER, as Comptroller of the City of New York, Respondent.

TRANSFER TAX ACT — AS AFFECTING BEQUEST IN EXERCISE OF POWER. Bequests in the exercise of a power by will, executed after the enactment of the Transfer Tax Act (L. 1892, ch. 399), but created by a will which took effect before the enactment of any taxable transfer law, are not subject to the transfer tax, since the source of title is the will creating the power, into which the names of the appointees must be read, and their right of succession vests, not at the time of the execution of the power, but at the time the will creating it went into effect.

*Matter of Harbeck*, 43 App. Div. 188, reversed.

(Argued November 20, 1899; decided January 9, 1900.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered August 8, 1899, affirming an order of the Surrogate's Court of New York county sustaining an appeal taken by the comptroller of the city of New York from an order declaring that a trust fund was not subject to an inheritance tax.

John H. Harbeck died February 2nd, 1878, leaving a last

will and testament bearing date February 19th, 1877, which was duly proved in the Surrogate's Court of the county of New York, February 19th, 1878. Only the fourth paragraph of the will is involved in this review and reads as follows :

" *Fourth.* I give and bequeath to my said executrix and executors, the sum of three hundred thousand dollars, to have and to hold the same to my said executors and executrix, and to the survivors and survivor of them in trust, nevertheless, for the uses and purposes following, that it to say : That they shall as soon as practicable after my decease loan out or invest the same upon bond and mortgage, or in the public stocks or securities of the United States or State of New York, or in such other securities as they in their best judgment shall deem proper, and shall semi-annually thereafter pay unto my said wife Eliza D. Harbeck the whole of the interest or income thereof so long as she shall live, and upon her death to pay and deliver over the aforesaid principal sum of three hundred thousand dollars to such person or persons as the said Eliza D. Harbeck shall in and by her last will and testament give and bequeath the same, and in default of such last will and testament, then to pay and deliver over the same to such person or persons, and in the same proportions, as by the present laws of the State of New York would take and inherit real estate from the said Eliza D. Harbeck, in case of her dying intestate seized and possessed thereof."

Eliza D. Harbeck, the living beneficiary named in the will, died on the 15th day of January, 1896, leaving a last will and testament bearing date October 20th, 1887, in and by which she executed the power of appointment authorized by the will of her husband. Her will was probated in the Surrogate's Court of the county of New York on February 3d, 1896, and the provision by which she exercised the power of appointment, in so far as the same is material, reads as follows :
" *Third.* Under and by virtue of the power and authority given to me in and by the last will and testament of my deceased husband, John H. Harbeck, bearing date the 19th day of February, 1877, and duly proved before the Surrogate

of the county of New York on the 19th day of February, 1878, I do give and bequeath the principal sum of three hundred thousand dollars, which in and by the fourth section or subdivision of said last will and testament of said John H. Harbeck, deceased, is given to the executrix and executors thereof in trust for my benefit so long as I shall live, as follows, viz. : " (Here follow the names of twenty-one legatees to whom this trust fund is directed to be paid in different sums.)

After the death of Eliza D. Harbeck in 1896, the surrogate appointed an appraiser to appraise the value of the trust fund and of the different interests therein. The appraiser reported that the fund was not subject to taxation under the Transfer Tax Law and an order as of course was entered in the Surrogate's Court confirming said report. From this order an appeal was taken to the surrogate, where it was reversed and the matter remitted to the appraiser to ascertain the value of the trust fund and of the different interests therein. Thereupon the trustee appealed to the Appellate Division of the Supreme Court, where the order of the surrogate was affirmed. From that order the trustee appeals to this court.

*David B. Hill* and *Alfred S. Brown* for trustee, appellant. The imposition of the transfer tax upon the trust fund in this case creates a charge upon it which did not exist when the fund was created at the death of the testator John H. Harbeck, and is an interference with his right to transmit his property free from any burdens save such as were imposed by the laws in force at his death. (*Matter of Enston*, 113 N. Y. 177 ; *Matter of Seaman*, 147 N. Y. 69.) It is a well-settled principle of the law of powers that a grant or gift made by means of a power of appointment is the grant or gift of the person who creates the power, and not of the person to whom the power is given. (4 Kent's Comm. 338 ; *Genet* v. *Hunt*, 113 N. Y. 158.) This principle of the law of powers, that the transfer is the act of the donor of the power, and not of the donee, has been recognized and applied in all the cases arising

under the Transfer Tax Law. (*Matter of Stewart*, 131 N. Y. 274; *Comm.* v. *Williams*, 13 Penn. St. 29; *Emmons* v. *Shaw*, 15 N. E. Rep. 1032; *Matter of Astor*, N. Y. L. J., July 1, 1896.) The transfer of property mentioned in the Transfer Tax Law, which causes the lien of the transfer tax to accrue, is a transfer from the owner of the property, taking effect at the time of, and by reason of, his death. The lien of the tax accrues, if at all, at the time such transfer takes effect. (*Matter of Seaman*, 147 N. Y. 69; *Matter of Curtis*, 142 N. Y. 219; *Matter of Stewart*, 131 N. Y. 281; *Matter of Sutton*, 3 App. Div. 208.) The statute should be strictly construed against the state and in favor of the property owner. (*Matter of Fayerweather*, 143 N. Y. 114; *Matter of Enston*, 113 N. Y. 174.)

*Henry A. Himmelmann*, special guardian, for infants, appellants. The bequest of the remainder under the will of John H. Harbeck worked a vested, although defeasible, interest in the remaindermen — the heirs at law of Eliza D. Harbeck — on the death of the testator John H. Harbeck, and notwithstanding this remainder was defeated by the exercise of the power of appointment, and the possession passed by virtue of the power, the transfer took place at the death of the testator John H. Harbeck, and as that occurred prior to the enactment of the Taxable Transfer Act of 1892, the remainder is not taxable under that act. (*Matter of Seaman*, 147 N. Y. 75; *Dana* v. *Murray*, 122 N. Y. 604.) The "Transfer Tax Law" (Ch. 399, L. 1892) was not intended to and did not include transfers of property passing under powers of appointment created by will of a testator who died before the enactment of any collateral inheritance or transfer tax law, though the execution of such a power took place subsequent to the act of 1892. In other words, until the amendment of 1897, such transfers were not within the scope and spirit of the Transfer Tax Law. (*Matter of Stewart*, 131 N. Y. 274.) The legislature has itself declared by subsequent legislation that the act of 1892

was not intended to cover property passing under powers of appointment created before its enactment. . (*Ely* v. *Holton*, 15 N. Y. 595; *Matter of Arnett*, 49 Hun, 599; *Craig* v. *Town of Andes*, 93 N. Y. 405; *People ex rel.* v. *Davenport*, 91 N. Y. 574; *People* v. *K. I. Co.*, 99 N. Y. 181; *People ex rel.* v. *Wemple*, 129 N. Y. 543.) The provision, " Such tax shall also be imposed when any such person or corporation becomes beneficially entitled in possession or expectancy to any property or the income thereof by any such transfer, whether made before or after the passage of this act," contained in the third subdivision of section 1 of chapter 399, Laws of 1892, if retroactive, is restricted to transfers by deed, etc., and does not extend to transfers effected by will. (*People* v. *O'Brien*, 111 N. Y. 60; *Quinlan* v. *Welch*, 141 N. Y. 165; *Matter of Miller*, 110 N. Y. 216; *Matter of Hendricks*, 1 Connolly, 301; *Matter of Seaman*, 147 N. Y. 75; *U. S.* v. *Wiggleworth*, 2 Story, 369; *U. S.* v. *Watts*, 1 Bond, 580; *Matter of Fayerweather*, 143 N. Y. 114; *Matter of McPherson*, 104 N. Y. 306; *Matter of Enston*, 113 N. Y. 174.)

*Emmet R. Olcott* for respondent.   It is well settled that the tax is not one upon property which is transferred, but upon the right of succession, and that the tax was imposed when that right of succession was created or came into being. (*Matter of Swift*, 137 N. Y. 87; *Matter of Seaman*, 147 N. Y. 74; *Matter of Merriam*, 141 N. Y. 484; *Matter of Hamilton*, 148 N. Y. 310.)   The beneficiaries of Eliza D. Harbeck took by virtue of the execution of the power of appointment contained in the will of John H. Harbeck.   The power of appointment was executed by the will of Eliza D. Harbeck, who made the gifts in executing the power.   Where persons take under a power of appointment, their interests vest and the right of incumbrance of the state attaches at the date of the execution of the power. (*Matter of Piffard*, 111 N. Y. 410; *Dyer* v. *Ewing*, 2 Dem. 160; *Jackson* v. *Babcock*, 12 Johns. 389; *Dixon* v. *Storm*, 5 Redf. 419; *Matter of Stewart*, 131 N. Y. 274;

2 Washb. on Real Prop. [5th ed.] 734 ; *Jackson* v. *Davenport*, 20 Johns. 536 ; *Matter of Johnson*, 47 N. Y. S. R. 391 ; *Siebert's Appeal*, 110 Penn. St. 329 ; *Reisch* v. *Commonwealth*, 106 Penn. St. 521.) The provisions of chapter 399 of the Laws of 1892 are not restricted to transfers by deed, but extend to transfers effected by will where the right of succession thereunder vests or accrues subsequent to the passage of that act. (*Matter of Forsythe*, 32 N. Y. Supp. 175 ; *Matter of Brooks*, 32 N. Y. Supp. 176 ; *Talmadge* v. *Seaman*, 85 Hun, 242 ; *Matter of Davis*, 149 N. Y. 539.) It was the intention of the legislature by the enactment of chapter 399, Laws of 1892, to abolish fictions of law ; consequently the fictitious doctrine of relation under powers of appointment is defeated, the beneficiaries took directly under the will of Eliza D. Harbeck, and their interests are taxable. (*Matter of Hoffman*, 143 N. Y. 334 ; *Matter of Swift*, 137 N. Y. 77 ; *Matter of Sutton*, 3 App. Div. 208 ; *Matter of Stiger*, 7 Misc. Rep. 268 ; *Matter of Curtis*, 142 N. Y. 219 ; *Matter of Bronson*, 150 N. Y. 1 ; *Matter of Whiting*, 150 N. Y. 27 ; *Matter of Houdayer*, 150 N. Y. 37 ; *Matter of Merriam*, 141 N. Y. 484 ; *Matter of Hamilton*, 148 N. Y. 310.).

PARKER, Ch. J. Several years before the appearance on the statute books of this state of a Taxable Transfer Law, John H. Harbeck died, leaving a last will and testament, by which he bequeathed the sum of three hundred thousand dollars in trust, the income thereof to be paid to his wife during her life, and after her death the principal to such persons and in such proportions as she should appoint by her last will and testament ; and in the event of her failure to exercise the power of appointment, it should go according to the Statute of Descents. The appointor exercised the power thus vested in her, by a will dated October 20th, 1887, and which was admitted to probate shortly after her death and on the third day of February, 1896.

The question for decision is, whether this fund is subject to tax under the Taxable Transfer Act of 1892. It is a question

of no special public importance, for, since the death of the appointor, by an act which became a law April 16th, 1897, the legislature has amended § 220 of the Taxable Transfer Act so that it now expressly provides that "whenever any person or corporation shall exercise the power of appointment derived from any disposition of property made either before or after the passage of this act, such appointment when made shall be deemed a transfer taxable under the provisions of this act in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will.   *   *   * "

Apparently this case has no importance other than as to the parties who are interested in the determination which must be made whether this particular trust fund shall be taxed by the state.   In such case the rule is said to be that where the question is involved in doubt, the doubt should be resolved in favor of the taxpayer, and against the taxing power (*Matter of Fayerweather*, 143 N. Y. 114), and the reason for the rule is given in *Matter of Enston* (113 N. Y. 174) as follows : " The tax imposed by the act is not a common burden upon all the property or upon the people within the state.   It is not a general but a special tax, reaching only to special cases and affecting only a special class of persons.   *   *   *   It is a well-established rule that a citizen cannot be subjected to special burdens without the clear warrant of law."

The decision of this court in *Matter of Miller* (110 N. Y. 216) is authority for the proposition that the act of 1897 is entitled to consideration at the hands of the court, as a legislative declaration that the subject-matter of the new provisions did not prior thereto constitute a part of the law.   In that case, the question was whether a legacy to an adopted child was taxable, the tax having been imposed in 1886, under the law as it then stood.   But the legislature having a year later passed an act expressly exempting adopted children, this court, in determining whether the legacy was taxable under

28

the law as it stood in 1886, said : " Moreover, the fact that such provision was made by the statute of 1887 (Ch. 713), and the act of 1885 amended accordingly, must be regarded as a legislative declaration that the law did not, as originally passed, embrace the provisions which the later act supplies."

The legislative declaration in this case, for it amounts to that at least, seems well founded, and we proceed at once to a consideration of the only point of difference between this court and the learned Appellate Division. That court in its opinion, and rightly, as we think, asserted the following propositions: *First*, that the tax sought to be imposed is not a tax upon property, but upon a right of succession. *Second*, that the Transfer Tax Act has no retroactive effect. *Third*, that the beneficiaries, whose succession is sought to be taxed, take by virtue of the will of John H. Harbeck, which went into effect in 1878, long prior to the enactment of the Transfer Tax Law. These propositions are not only well founded in reason, but they are established by authority, the first two by *Matter of Swift* (137 N. Y. 77), and the last by *Matter of Stewart* (131 N. Y. 274). The latter case but restates a rule that long ago became engrafted upon the body of the law. It is, in the language of Chancellor KENT, that " An estate created by the execution of a power takes effect in the same manner as if it had been created by the deed which raised the power. The party who takes under the execution of a power, takes under the authority and under the grantor of the power, whether it applies to real or personal property, in like manner as if the power and the instrument creating the power had been incorporated in one instrument." (4 Kent's Com. 338.) So, while the power of appointment did not take effect until after the death of Mrs. Harbeck in 1896, it was not the authority by which the beneficiaries acquired the fund. The source of their title to the fund was the original will of John H. Harbeck, which went into effect in 1877, and into that instrument must be read the names of the appointees, although designated by a later instrument. For those who take under a power of appointment, take as if their

names were in the grant of the power. (*Commonwealth* v. *Williams' Exrs.*, 13 Pa. St. 29, citing 2 Vesey, 61.)

In *Matter of Stewart* (*supra*) the will of the testatrix created a trust for certain purposes, and authorized the trustees, after using so much of the trust fund as should be required for the trust purposes, to appoint any part of the estate among any of the legatees in the will. The will was probated November 13, 1886, and the power was exercised January 16th, 1890, and in determining whether the sum received by one of the appointees was taxable under the law of 1885, the court reached a conclusion which cannot be more briefly stated than in its own words: "We think there can be no reasonable doubt that the appointees under the power of appointment took their interests under and by virtue of the will, and not in a legal sense under the instrument of January 16th, 1890, in execution of the power."

The three propositions to which we have adverted, standing alone, necessarily lead to the conclusion that the right of succession to the property in question is not taxable, for it passed to the beneficiaries under and by virtue of a will that went into effect long before the enactment of a Transfer Tax Law, and as that law is not retroactive, it necessarily follows that the property is not subject to the tax.

In the past, however, there have been a few cases in which the courts have been called upon to decide that while the instrument by which the power is said to be executed becomes incorporated into and forms a part of the original instrument creating the power, yet it takes effect as of the date of the execution of the power, and these cases have been laid hold of to make the final step in the transfer of the property from the testator Harbeck to these beneficiaries operate as the dominating one; the act of the appointor, instead of that of the testator, being treated as the one by which the fund is transmitted to them. In other words, notwithstanding the general rule by which a paper constituting an execution of the power of appointment becomes incorporated into the original instrument creating the power (so that the latter is given the

same effect as if the names of the appointees were originally
written into the instrument creating the power), it is said
that the date of the original instrument is to be ignored, and
that upon which the power of appointment is exercised sub-
stituted fully in its stead.   If the position taken be correct, it
follows that the conclusion reached, that the right of succession
vested at that time, has support.

But long after the decisions in the cases relied upon by the
learned   judge who wrote for the Appellate Division to
establish the proposition that while title is derived from the
act creating the power, it takes effect as of the time of the
execution of the power (*Jackson* v. *Davenport*, 20 John.
537;  2 Vesey,  61; *Commonwealth* v. *Williams' Exrs.*,
*supra*), this court had that question before it in *Genet* v. *Hunt*
(113 N. Y. 158).   In that case by a trust deed property was
given to trustees to pay the income to a woman during her cover-
ture, and in case of her death during coverture, to convey the
property to such persons as she might direct by will.   She made
a will giving the property upon a trust that suspended the
power of alienation during two lives in being.   The question
was whether this constituted a valid disposition of the prop-
erty under the law against perpetuities.   It was valid if the
property could be regarded as her property and as transferred
by her will, because then the suspension of the power of
alienation was only during two lives in being, but if it was
held to be the property of the grantor in the trust deed and
as passing under that deed, then it was invalid, for the deed
and the will taken together suspended the power of aliena-
tion during three lives, two of which were not in being when
the trust deed went into effect.   The court held that the
trusts under the will should be regarded as having been created
at the date of the trust deed, and that they were, therefore,
invalid.   In the course of the argument leading to the con-
clusion reached, the court called attention to the distinction
recognized in the common law between appointments under
special powers and appointments under general or absolute
powers.   The latter is said to exist where the owner may dis-

pose of property in any of the forms known to the law, as where an unrestricted power to appoint a fee in lands by deed or will is given, in which case the donee of the power may at any time acquire an absolute estate by exercising the power. "And for this reason" (said the court) "the question of perpetuity arising upon limitations made by the donee of such a power is determined with reference to the date of the execution of the power and not of the instrument creating it." That constitutes an exception to the general rule which relates to special powers, as in this case, where the authority of the donee of the power is restricted to disposition by will. In such cases the rule is that "An estate created by the execution of a power takes effect in the same manner as if it had been created by the deed which raised the power."

The court further said: "We think the validity of the suspension under the will of Mrs. Riggs is to be determined by the test whether it would be valid if it had been part of a limitation under the trust deed and had been inserted therein *at the time* the deed was executed," and, therefore, the court held that the trusts under the will of Mrs. Riggs, in whom was vested the power of appointment, should be construed as if created *at the date of the trust deed*, and, as thus construed, that they were invalid, because they provided for a possible suspension of the power of alienation for three lives.

The *Genet* case and this one are not readily distinguishable upon the point we have been considering, and the former should control this decision.

*Matter of Langdon* (153 N. Y. 9) is not directly in point, for in that case it was held that the appointor having failed to appoint the persons to whom the fund should go, it passed under the original will, and the court expressly declined to consider what would have been the effect had the power of appointment been exercised. This case would have been like that one had this appointor omitted to exercise the power. In that event the fund would have been distributed according to the Statute of Descents, and, under *Matter of Langdon*, the transmission would have been by the original will and not tax-

able.   But the testator provided that his wife might appoint, or if she did not the statute should, and as we have attempted to show, the law is, that in the first contingency, as well as the last, the property passed by the will of the owner of it and necessarily as of the date of that instrument.

The order should be reversed, with costs.

All concur.

Order reversed.